**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CANYON PARTNERS REAL ESTATE LLC, a Delaware limited liability company (f/k/a CANYON CAPITAL REALTY ADVISORS, LLC),

Plaintiff,

v.

NEWBANKS/WASHINGTON CONSTRUCTION CONSULTING SERVICES, INC., a Virginia corporation, successor by merger to NEWBANKS, INC./WASHINGTON, a Maryland corporation,

Defendant.
_____________________________________/

Case No. 2:17-cv-12852

Hon. Bernard A. Friedman

Magistrate R. Steven Whelan

**FIRST AMENDED COMPLAINT**

Plaintiff Canyon Partners Real Estate LLC (f/k/a Canyon Capital Realty Advisors, LLC), a Delaware limited liability company ("Plaintiff") states as follows for its First Amended Complaint against Defendant Newbanks/Washington Construction Consulting Services, Inc., a Virginia corporation ("Defendant"):

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a Delaware limited liability company with its principal place of business in Los Angeles, California.

2. Upon information and belief, Defendant is a Virginia corporation with its principal place of business in Arlington, Virginia.

3. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties in this matter are of diverse citizenship and the amount in controversy exceeds $75,000.

4. This Court possesses personal jurisdiction over Defendant because Defendant carries on systematic and continuous business in Michigan.

5. The events giving rise to the claims in this Complaint occurred within this judicial district, and venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

6. This lawsuit involves a construction project, which was financed by Can IV Packard Square, LLC ("Can IV"), an affiliated entity created and controlled by Plaintiff for the sole purpose of making the construction loan. Specifically, Can IV entered into a substantial construction loan with a maximum principal amount of nearly $54 million to Packard Square LLC ("Borrower") to finance the construction of a mixed-use development on real property Borrower owns in the City of Ann Arbor, County of Washtenaw, State of Michigan (the "Project").

7. As part of the financing of the Project, Plaintiff engaged a

construction consultant, Defendant, to provide services in two general categories within Defendant's area of expertise: (1) construction document review and cost analysis; and (2) construction progress observation.

8. Specifically, on or about, May 6, 2014, Plaintiff and Defendant entered into an agreement under which Defendant agreed to provide a variety of construction consulting services, including, without limitation, review of construction documents and cost analysis services as well as progress observation and draw review services (the "Agreement", a copy is attached as **Exhibit 1**).

9. The Agreement specifically provided in the section entitled "Reliance" (contained in the Standard Terms of Agreement) that "*[r]eliance is granted only to Client, Client's successor, affiliates and assigns, a named capital funding source, or a* ***special purpose lending entity created solely for the purpose of investment*** *into the subject of this Agreement*". (Exhibit 1, p 4, emphasis added).

10. Under the terms and conditions of the Agreement, among other things, Defendant agreed generally to provide monthly draw review observation reports as follows:

> A Monthly Report will be generated that includes a narrative of current progress by building system as well as status of budget, stored materials, retainage, change order, contingency, lien waiver, permit, schedule and special inspections as documented within the draw package. An evaluation of projected hard cost exposure will be provided, including a comparison with Owner or Client provided development budget balances if available. A

disbursement recommendation will be made, including a detailed listing of qualifications to the recommendation as necessary. [**Exhibit 1**, p 2].

11. Under Rider B of the Standard Terms of Agreement attached to the Agreement, Defendant further, and more specifically, agreed to provide the following pertinent services:

The scope of work included in the monthly fee for construction progress observations shall include the following:

1. Determination of the **overall project's percentage of completion** status including a narrative description of work completed to date, work in progress, materials stored on site and materials stored off site, if any.

2. Review and comment on submitted contractor's application for payment as to **whether or not the itemized amounts are a valid representation of the value of work in place** and materials stored on site. The [Defendant] shall conclude with a recommendation of the amount to fund and/or monies to withhold.

3. Determine whether or not **the itemized percentages of completion indicated by the contractor on the application for payment are accurate** and substantially represent the progress of the observed work in place and materials stored on site.

4. Identify **any overruns** or savings to line items and make a determination as to the sufficiency of the remaining budget to complete the project.

5. Review and verify that the backup invoices are genuine, current, and representative of this project and in support of monies drawn. Any exceptions are to be clearly identified.

* * *

10. Provide [Defendant]'s opinion as to whether or not the work completed to date is in general compliance with the Scope of Work indicated

in the plans and specifications and is **within accepted standards of good quality workmanship**. **[Defendant] is to clearly identify any discrepancies, deficiencies, or problems**. Any objectionable or questionable work observed shall be discussed with the borrower's contractor and/or architect on site personnel for clarification prior to, or as part of, status reporting.

* * *

13. Separately and specifically comment on **any delays, problems, deficiencies, poor workmanship, deviations from accepted industry standards** or any other matter which in the [Defendant]'s opinion does or might adversely affect the value and/or collateral security interest in this project.

14. Review and comment on the construction progress relative to the original work schedule and subsequent revised work schedules including a determination as to the **feasibility of the proposed completion date**.

* * *

16. Include labeled photographs showing the status of the project and **isolate any problem areas of items of concern**. Labels should identify the date the photograph was taken, the subject matter and orientation relative to the site and/or building plans.

[**Exhibit 1**, pp 7-8, emphasis added].

12. The terms of the Agreement further obligated Defendant to review the construction documents and provide a cost analysis of the Project. (**Exhibit 1**, pp 1-2). Specifically, the Agreement provides as follows:

[Defendant] will analyze the hard cost budget for the work and use a variety of public and proprietary national databases of comparable project costs to determine if sufficient funds have been budgeted for construction. Comparisons will be made on a line-item per square foot basis for general conditions and major building systems utilizing the Construction Specifications Institute outline format. Take-off estimating will not be

performed. An opinion regarding the adequacy of the budgeted hard cost contingency will be provided. [*Id.*]

13. On September 12, 2014, Defendant provided its Construction Documents & Cost Analysis to Plaintiff ("Cost Analysis", a copy is attached as **Exhibit 2**).

14. In the Cost Analysis, Defendant opined, among other things, that "the submitted construction drawings and specifications meet the industry's basic 'reasonable standard of care;' appear to describe a Code compliant facility upon completion; are sufficiently developed to provide the basis for the Owner-Contractor Agreement and underlying subcontractor agreements; and are suitably complete for the permitting and bidding of the work." (Exhibit 2, pp 2-3).

15. Defendant further concluded in its Cost Analysis that the "proposed project direct hard costs of $31,000,000 detailed in the schedule of values provided are similar to comparable projects and with line item differences reasonably justified by unique building configuration/perimeter area factors . . . ." (Exhibit 2, p 3). Additionally, Defendant opined that the construction contingency of $1,277,333 in the construction budget was within industry standards.

16. Plaintiff relied on the Cost Analysis in determining whether to enter into the construction loan agreement with Borrower and, more particularly, in determining the amount of the loan to Borrower to complete construction of the Project.

17. During the early phases of construction of the Project and pursuant to its obligations under the Agreement, Defendant periodically visited the Project site and, correspondingly, prepared and provided periodic "Progress & Draw Review Reports" to Plaintiff.

18. Plaintiff relied on the Progress & Draw Review Reports of Defendant in determining the proper amount to fund the pay applications for work performed on the Project. In so doing, Plaintiff relied on Defendant's expertise in performing its obligations.

19. On September 16, 2016, Defendant provided Plaintiff with a Progress & Draw Review Report (the "September 2016 Progress & Draw Review Report", a copy is attached as **Exhibit 3**). In the September 2016 Progress & Draw Review Report, Defendant recommended that Plaintiff fund the pay applications of the general contractor, the excavation subcontractor and Borrower in the following amounts:

A. $850,423.71 for the general contractor's June 30, 2016 pay application;

B. $583,007.95 for the general contractor's July 31, 2016 pay application;

C. $24,615.00 for the excavation subcontractor's June 25, 2016 pay application; and

D. $334,550.36 for the Borrower's Requisition No. 12. [Exhibit 3, p 3].

20. Defendant based the above funding recommendations on the August 1, and September 1, 2016 Project site inspections of one of Defendant's representatives. (*Id*.)

21. Specifically, Defendant averred in the September 2016 Progress & Draw Review Report that the Project was 58% complete as of July 31, 2016. Defendant also opined that substantial completion of the Project, originally scheduled for March 1, 2017, could not be achieved within the original schedule and would be delayed, under the then existing conditions, by 4-6 months. Defendant stated that, if all trades fully engaged, substantial completion would be achieved by May 1, 2017.

22. Additionally, in the September 2016 Progress & Draw Review Report, Defendant stated that, "[Defendant] did not identify any visually apparent unaddressed deficiencies." (Exhibit 3, p 4).

23. Defendant's statements and opinions in the September 2016 Progress & Draw Review Report constitute negligence and/or a breach of the Agreement.

24. First, Defendant failed to assess the percentage completion of the Project accurately.

25. Next, Defendant failed to exercise the standard degree of skill and care customarily accepted in the construction underwriting industry. As a result,

Defendant failed to observe numerous critical deficiencies that would have been apparent to an experienced observer applying the accepted practices and procedures for construction progress observations.

26. Additionally, Defendant failed to report that the general contractor's and Borrower's contractual and working relationship had deteriorated to the point that the Project was in serious jeopardy.

27. Defendant also failed to report that the Project was essentially stalled due to the low the level of work activity, the number of workers and the number of trades/subcontractors on the job.

28. Further, Defendant failed to assess the amount of time necessary to achieve substantial completion of the Project accurately.

29. At the time Defendant issued its September 2016 Progress & Draw Review Report, the Project was not simply behind schedule, it was grossly over budget, under staffed and likely never to be completed.

30. Furthermore, Defendant failed to identify and make Plaintiff aware that certain equipment, materials, fixtures, and supplies for the project did not conform to the agreed upon specifications.

31. Defendant also owed a duty independent of any obligation under the Agreement to advise Plaintiff that Defendant's initial Cost Analysis was inaccurate and/or incomplete. In that regard, Defendant failed to inform Plaintiff that the cost

to complete the Project was substantially greater than the $31 million amount Defendant initially opined, even considering any contingency, that it would cost to complete construction of the Project.

32. Plaintiff relied on Defendant's misrepresentations and omissions concerning the status and condition of the Project. Indeed, Plaintiff funded more than $1 million in pay applications based on misrepresentations, errors and omissions of Defendant.

**COUNT I – BREACH OF CONTRACT**

33. Plaintiff incorporates herein all other allegations of this Complaint.

34. Plaintiff and Defendant entered into the Agreement which is a valid, binding and enforceable contract.

35. Plaintiff fulfilled all of its obligations under the Agreement.

36. Defendant breached its obligations under the Agreement by: (1) failing to assess the percentage completion of the Project accurately; (2) failing to observe numerous deficiencies in the construction; (3) failing to report the breakdown in the relationship between the general contractor and Borrower; (4) failing to report that the Project was essentially stalled due to the cessation of work on the Project; (5)failing to correctly assess the amount of time necessary to achieve substantial completion of the Project accurately; and (6) failing to identify and make Plaintiff aware that certain equipment, materials, fixtures, and supplies

for the project did not conform to the agreed upon specifications.

37. As a direct and proximate result of Defendant's breaches of the Agreement, Plaintiff has suffered damages in excess of $1,000,000.00.

**COUNT II**
**NEGLIGENT MISREPRESENTATION**

38. Plaintiff incorporates herein all other allegations of this Complaint.

39. Defendant made material misrepresentations as alleged above in this Complaint.

40. Defendant knew or should have known that the material misrepresentations he made were false when he made them, or he made them recklessly, without regard for their truth.

41. As Plaintiff's construction consultant, Defendant assumed a duty of care to provide reasonably accurate information to Plaintiff, particularly where Defendant knew or should have known that Plaintiff would rely on Defendant's representations.

42. Defendant failed to exercise reasonable care in making the material misrepresentations alleged in this Complaint.

43. As a result of Defendant's negligent misrepresentations, Plaintiff has suffered damages in excess of $1 million.

**COUNT III - NEGLIGENCE**

44. Plaintiff incorporates herein all other allegations of this Complaint.

45. Defendant assumed the duty to oversee the Project and provide Plaintiff with accurate and complete information concerning the sufficiency of the scope of work and of the budget to complete such work on the Project and owed Plaintiff a duty to use reasonable care in the performance of such oversight.

46. By virtue of the conduct described above, Defendant breached its duty to Plaintiff.

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in excess of $1 million.

48. WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in its favor and against Defendant in an amount greater than $1 million plus all interest, costs, and attorneys' fees, and grant Plaintiff such other relief as this Court deems proper.

Respectfully submitted,

DICKINSON WRIGHT PLLC

/s/ J. Benjamin Dolan
J. Benjamin Dolan (P47839)
*Attorneys for Plaintiff*
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
(248) 433-7200
bdolan@dickinsonwright.com

Dated: November 16, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

DICKINSON WRIGHT PLLC

/s/ J. Benjamin Dolan
J. Benjamin Dolan (P47839)
*Attorneys for Plaintiff*
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
(248) 433-7200
bdolan@dickinsonwright.com

DETROIT 59196-2 1441552v1