UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANYON PARTNERS REAL ESTATE LLC,

    Plaintiff,                                          Civil Action No. 17-CV-12852

vs.                                                  HON. BERNARD A. FRIEDMAN

NEWBANKS/WASHINGTON CONSTRUCTION
CONSULTING SERVICES, INC.,

    Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 35]. Plaintiff has filed a response brief, and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

This is a breach of contract and negligence action concerning a construction project. Plaintiff Canyon Partners Real Estate LLC ("Canyon"), through its subsidiary Can IV Packard Square LLC, provided the financing for the project, a $30-50 million building with apartments and retail space on a six-acre lot in Ann Arbor, Michigan. Canyon, which is located in California, hired defendant Newbanks/Washington Construction Consulting Services, Inc. ("Newbanks"), whose main offices are in Maryland, to serve as a "construction consultant."

The parties' agreement, dated May 6, 2014, is attached to the amended complaint as Exhibit 1. For a monthly fee ($4,450 for "construction documents and cost analysis" and $1,950 for "monthly construction progress observations"), Newbanks agreed among other things to provide to Canyon a monthly report about building progress; evaluate "projected hard cost exposure"; make "disbursement recommendations"; determine the "percentage of completion" and whether the

contractor was accurately reporting progress; identify cost overruns; opine as to whether work was being done within accepted standards and report discrepancies; "comment on any delays, problems, deficiencies, [and] poor workmanship"; determine the feasability of the proposed completion date; provide plaintiff with photos and note problem areas; and determine whether sufficient funds were budgeted for the project.

Plaintiff is dissatisfied with defendant's performance and has sued for breach of contract (Count I), negligent misrepresentation (Count II), and negligence (Count III). Counts II and III have been dismissed. The central breach of contract allegations are:

> 36. Defendant breached its obligations under the Agreement by: (1) failing to assess the percentage completion of the Project accurately; (2) failing to observe numerous deficiencies in the construction; (3) failing to report the breakdown in the relationship between the general contractor and Borrower; (4) failing to report that the Project was essentially stalled due to the cessation of work on the Project; (5) failing to correctly assess the amount of time necessary to achieve substantial completion of the Project accurately; and (6) failing to identify and make Plaintiff aware that certain equipment, materials, fixtures, and supplies for the project did not conform to the agreed upon specifications.

Am. Compl. ¶ 36.

Plaintiff alleges that "[a]s a direct and proximate result of Defendant's breaches of the Agreement, Plaintiff has suffered damages in excess of $1,000,000.00." *Id.* ¶ 37. In fact, plaintiff contends that it has suffered "approximately $5.1 million [in] damages" as a result of defendant's breaches. Pl.'s Br. at 9. Plaintiff itemizes its damages in broad terms in three areas, as it explains in its response to the instant motion:

> First, as set forth in Plaintiff's Complaint, Defendant

recommended in the September 2016 Report[1] that Plaintiff fund the pay applications of the general contractor, the excavation subcontractor and Owner in the following amounts:

> A. $850,423.71 for the general contractor's June 30, 2016 pay application;
>
> B. $583,007.95 for the general contractor's July 31, 2016 pay application;
>
> C. $24,615.00 for the excavation subcontractor's June 25, 2016 pay application; and
>
> D. $334,550.36 for the Borrower's Requisition No. 12.

*See* ECF No. 7; *see also* Def's Mot., Ex. B, Van Curen Tr. at 60:11-21. The Agreement expressly required Defendant to, among other things, "[r]eview and comment on submitted contractor's application for payment as to whether or not the itemized amounts are a valid representation of the value of the work in place and materials stored on site." Ex. 1, p. 7. On the basis of that review, Defendant was then required to conclude with either (1) a recommendation to fund, or (2) a recommendation to withhold funds. *Id.* Thus, consistent with its express contractual obligations, Defendant recommended that Plaintiff fund these amounts. However, the work that Defendant was required to review and determine whether that work was "a valid representation of the value of the work in place and materials stored on site" *was not actually in place*. Def's Mot., Ex. B, Van Curen Tr. at 60:11-21; 139:5-25. In other words, it was Defendant's contractual obligation to ensure that work was in place, *see, e.g.* Ex. 1 at Rider B, ¶¶ 1-3, 5, 10-11, and then recommend that Plaintiff either fund or withhold funds on the basis of Defendant's review. Defendant breached its contractual obligations, directly resulting in Plaintiff's payment for work that was *not* actually performed. Def's Mot, Ex. C, Goldman Tr., 22:3-5 ("We make our payments on pay applications based on the recommendation of the construction consultant.").

Second, Plaintiff's expert opined that Defendant failed to

---

[1] The "September 2016 Report" refers to the 12-page Progress & Draw Review Report dated September 15, 2016, that defendant prepared for plaintiff. A copy of this report is attached to the amended complaint as Exhibit 3.

3

> accurately assess the General Contractor's percent complete, resulting in an overpayment to the Contractor in the amount of $3,793,632.21 when compared to the work actually in place. The Agreement obligated Defendant to determine the overall percentage of completion of the Project and determine whether the Contractor's asserted percent completion was "accurate" and "substantially represent[ed] the progress of the observed work in place and materials stored on site." Ex. 1, Agreement, Rider B at ¶¶ 1, 3. Again, Defendant was required to make recommendations of funding or withholding. *Id.* at ¶ 2. For the period ending August 31, 2016, the Contractor asserted that the Project was 61.68% complete. Ex. 3, Van Curen Report at p. 2. In reality, when Plaintiff's expert viewed the work in place at that time, the Project was only 46% complete. *Id.* Notwithstanding, Defendant breached its contractual obligation to effectively audit the Contractor's assertion of percentage complete and continued to recommend that Plaintiff fund the Contractor draws based on the inaccurate percent complete. Defendant's breach directly resulted in Plaintiff's overpayment of the Contractor in the amount of $3,793,632.21, based on Defendant's recommendations and review made pursuant to its express contractual provisions.
>
> Third, the Agreement obligated Defendant to ensure that "backup invoices are genuine, current, and representative of this project and in support of monies drawn." Ex. 1, Agreement, Rider B at ¶ 5. Pursuant to Owner Draw No. 17, the Owner requested the funding of owner-direct hard costs in the amount of $428,232.51. Ex. 3, Van Curen Report, p. 3. But Plaintiff's expert opined that the documents submitted to support that request were inadequate. *Id.* Notwithstanding the lack of adequate support, and in breach of its obligation to ensure and verify the same, Newbanks recommended that Plaintiff fund that amount.

Pl.'s Br. at 10-12.

*Defendant's Motion for Summary Judgment*

Defendant seeks summary judgment on Count I on the grounds that all of the damages plaintiff demands are excluded because they are consequential damages and the contract excludes such damages. In response, plaintiff argues that its damages are "direct" or "general," not consequential, and therefore the exclusion does not apply; that the determination of whether

4

damages are consequential is a question of fact; and that the contract is ambiguous as to whether consequential damages are excluded.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See id.* at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

The relevant provisions of the contract state:

> <u>Liability Limitations</u>  For consideration from Newbanks Inc./Washington of $10.00, the adequacy and receipt of which is hereby acknowledged, Client agrees that Newbanks Inc./Washington's liability, and that of its employees, officers, directors, agents, consultants, and subcontractors to Client or any third party due to any negligent professional acts, whether in contract or tort, which arises directly or indirectly from Newbanks Inc./Washington's acts, negligence, errors, omissions, strict liability, or breach of contract will be limited the [sic] greater of (a) four (4) times the value of all compensation received by Newbanks Inc./Washington for its work performed under this Agreement or (b) the $1,000.000 professional liability coverage carried by Newbanks

5

> Inc./Washington. Claims must be made within one (1) year from the date of issuance of the related work product.
>
> The report will be prepared by qualified professionals experienced in this type of work in accordance with generally accepted practices in this locale, using the degree of care and diligence normally exercised under like assignments and circumstances by reputable members of our profession. However, there may be defects at the property that will not be readily ascertainable, visible, or which could be inadvertently overlooked due to the limited scope of our services. Other problems may develop over time, which were not evident at the time of this review. Consultant's liability including its employees, other consultants, and agents, shall be limited by these terms and, with regard to claims of damages, shall be limited to the errors and omissions policy value currently in place for Newbanks, Inc./Washington which is the amount of at least $1,000,000.00. It is agreed that this limitation shall apply to all claims, costs, and damages without respect to the legal theory asserted, and shall be governed by the laws of the State of Maryland. Either party shall have the right to cancel this agreement without cause by giving 30 days prior notice. All services rendered and related fees due prior to the end of the 30-day notice period are to be completed and paid in full.
>
> <u>Consequential Damages</u>  Under no circumstances will either party or its officers, directors, agents, and employees be liable to the other party or anyone claiming through our Client for any incidental, special, or consequential damages of any kind or nature whatsoever. Newbanks Inc./Washington shall not be liable for development or construction delays, interruptions in or failure of services resulting, directly or indirectly, from services provided by Newbanks Inc./Washington.

Am. Compl. Ex. 1 at 4 (PageID 127).

In a breach of contract action, the courts of Maryland[2] distinguish between "general" and "consequential" damages. *See, e.g., Simard v. Burson*, 14 A.3d 6, 15-16 (Md. 2011).

---

[2] The contract contains a provision stating that "[t]his agreement and any legal actions undertaken by Newbanks Inc./Washington shall be governed by the laws of the State of Maryland." Am. Compl. Ex. 1 at 6 (PageID 129).

"Consequential damages cover those losses suffered by the non-breaching party other than the loss in value of the other party's performance." *Id.* at 16 (citing Restatement (Second) of Contracts § 347 cmt. c (1981)). Comment c, in turn, states:

> *Other loss.* Subject to the limitations stated in §§ 350-53, the injured party is entitled to recover for all loss actually suffered. Items of loss other than loss in value of the other party's performance are often characterized as incidental or consequential. Incidental losses include costs incurred in a reasonable effort, whether successful or not, to avoid loss, as where a party pays brokerage fees in arranging or attempting to arrange a substitute transaction. Consequential losses include such items as injury to person or property resulting from defective performance. The terms used to describe the type of loss are not, however, controlling, and the general principle is that all losses, however described, are recoverable.

Restatement (Second) of Contracts § 347 cmt. c (citations to illustrations omitted).

The Maryland Court of Appeals repeated this distinction in *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 182 (Md. 2012), where it stated:

> Damages are calculated differently depending on which category the claim is in—whether it is for the "value of the other party's performance" or a "consequential loss" following from the breach. As we recently said in *Burson v. Simard*, when the claim is based on value, it is a "general damages" claim, calculated as "the difference between the contract price and the fair market value at the time of breach." 424 Md. 318, 327–28, 35 A.3d 1154, 1159 (2012) (citation and quotation marks omitted). However, when the claim is for "consequential loss," it is a "special" or " consequential" damages claim, calculated as losses that "may reasonably be supposed to have been in the contemplation of both parties at the time of making of the contract." *Id*. at 327, 35 A.3d at 1159 (citation and quotation marks omitted).

The court cited the approval the following example that contrasts consequential and general damages:

> [Suppose] the defendant breaches a contract to supply paint to a painting contractor. The contractor cannot find substitute paint

7

> quickly and he suffers two losses: (a) he loses a contract job on which he would have made profits; and (b) his reputation suffers so that he loses future profits on customers he would have enlisted but for his reputation as a painter who falls behind schedule. Although the second kind of claim may be identified as a loss of good will, both kinds of claims are for lost profits and both represent consequential damages[.] The damages are consequential because they are not based on the market value of the very thing promised (the paint).

*Id*. at 185 (quoting 3 Dan B. Dobbs, Law of Remedies § 12.4(3) (2d ed. 1993)). This comports with another respected treatise's definition: "[C]onsequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the nonbreaching party in its dealings, often with third parties, which were a proximate result of the breach and which were reasonably foreseeable by the breaching party at the time of contracting." Williston on Contracts § 66:55 (4th ed.).

In the present case, all of the damages plaintiff seeks fit squarely within these definitions of consequential damages. Plaintiff's damages are not general damages because they "are not based on the market value of the very thing promised" (i.e., consultation services), but on losses attributable to defendant's allegedly defective performance. As the cases cited above state, consequential damages are a permissible component of damages to remedy a breach of contract, so long as plaintiff demonstrates that they were proximately caused by the breach and that they were reasonably within the contemplation of the parties. In this case, however, the parties specifically agreed that Newbanks would not, under any circumstances, "be liable to the other party or anyone claiming through our Client for any incidental, special, or consequential damages of any kind or nature whatsoever." This clause plainly bars all of the damages plaintiff seeks in this case. Plaintiff's attempts to label its damages as "direct" or "general" are unconvincing.

Equally unconvincing are plaintiff's arguments that the contract is ambiguous and

that a jury should decide whether its damages are general or consequential. The contract's exclusion of consequential damages is crystal clear. This clarity is not lessened by the contract's "Liability Limitations" paragraph, which places a dollar limit on defendant's liability "due to any negligent professional acts, whether in contract or tort, which arises directly or indirectly from [its] acts, negligence, errors, omissions, strict liability, or breach of contract . . . ." This clause simply places a cap on defendant's liability regardless of the nature of the claim on which any liability may be based. The inclusion of the words "or indirectly" cannot reasonably be interpreted as being inconsistent with the clause in the following section of the contract that specifically and clearly eliminates defendant's liability for consequential damages.

Finally, the Court finds no merit in plaintiff's argument that a jury should decide whether plaintiff's damages are direct or consequential. Construing an unambiguous contract is a function of the Court, not a jury, *see, e.g., Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013), and the contract in this case is not ambiguous. Nor, for the reasons discussed above, is there any doubt as to whether the damages plaintiff seeks are consequential. There is, in short, no dispute for a jury to resolve. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.


Dated: April 11, 2019
   Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE